UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY RUIZ ABREU,

   Petitioner,

  v.

WARDEN, FLORIDA SOFT SIDE
SOUTH,  U.S. ATTORNEY
GENERAL,

   Respondents,

Case No. 2:26-cv-1171-KCD-NPM

/

## <u>ORDER</u>

Petitioner Larry Ruiz Abreu is a noncitizen currently detained by immigration authorities. He has filed a habeas corpus petition (Doc. 1) and several emergency motions (Docs. 2, 3, 4, 5). He seeks expedited consideration of the habeas petition, immediate release from custody, and an order prohibiting his removal.

Starting with the request for expedited consideration, Abreu claims that his continued confinement creates "the substantial risk of irreparable harm." (Doc. 3 at 1.) He mentions ongoing health problems (such as loss of consciousness) and "denial of medical care." (*Id.* at 2.) The Court does not take these allegations lightly. But here is the reality of the situation on the ground: the Court simply lacks the resources to expedite this case. Over the last month alone, this district has been inundated with ***several hundred***

habeas corpus petitions. The vast majority of claimants are, just like Abreu, alleging unconstitutional detention. And a great many of them, just like Abreu, have been detained for prolonged periods of time.

The Court is doing its level best to work through these cases as efficiently and effectively as possible. But "this is a district court—not a Denny's." *A.A.R.P. v. Trump*, 137 F.4th 391, 394 (5th Cir. 2025) (Ho, J., concurring). And despite what Abreu might believe, his petition is not a simple, run-of-the-mill filing. He raises complex legal claims challenging the government's authority to detain him pending removal. Resolving this dispute requires grappling with nuanced issues of statutory interpretation and constitutional due process. The Court cannot simply snap its fingers and arrive at the outcome.

Finally, there is a practical point to make here. When the Court is forced to stop reviewing the merits of these urgent petitions to read, consider, and draft orders resolving ancillary requests for speed—like the motion filed here—the entire process slows down. Diverting our limited judicial resources to address motions to expedite paradoxically ensures that relief for everyone comes slower. The arithmetic of a crowded docket is unforgiving. We cannot put one case on a faster track without inherently and unfairly delaying the rest. Every time a petition is pulled out of order and moved to the front of the line, another petition—perhaps one filed earlier by someone suffering from an

equally grave family situation—inevitably gets pushed further back. In a landscape where so many litigants are seeking urgent relief, fairness requires managing the queue with an even hand, rather than allowing a motion to expedite to effectively penalize those who are patiently waiting their turn.

Abreu's request for an order prohibiting his removal fares no better. (*See* Docs. 4, 5.) The Immigration and Nationality Act contains a jurisdiction-stripping provision that is as clear as it is potent. It states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

This provision is designed to protect the Government's discretion in three specific areas: commencing proceedings, adjudicating cases, and—crucially for Abreu—executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). When a claimant seeks an injunction to stay his removal, he is asking the court to do exactly what the statute forbids: interfere with the Government's decision to execute a removal order. *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021). "Courts across the country have thus found that they are barred from staying removal, even when the court might otherwise have jurisdiction over the [underlying] claims presented." *Edwin M.-N. v. Green*,

No. CV 19-6096 (KM), 2019 WL 13299141, at *2 (D.N.J. Feb. 19, 2019); *see also Rivera-Amador v. Rhoden*, No. 3:25-CV-1460-WWB-SJH, 2025 WL 3687452, at *3 (M.D. Fla. Dec. 19, 2025); *Lopez v. Warden, Stewart Det. Ctr.*, No. 4:18-CV-134-CDL-MSH, 2018 WL 7051097, at *2 (M.D. Ga. Dec. 26, 2018).

Because § 1252(g) removes this Court's power to act, Abreu's request to enjoin his removal from the United States must fail. *See, e.g., Torres-Mejia v. Trump*, No. 1:25-CV-1623, 2025 WL 3684258, at *9 (W.D. Mich. Dec. 19, 2025) ("Because a general request for a stay of removal would concern a decision or action by the Attorney General to . . . execute removal orders, the Court finds that § 1252(g) precludes [its] jurisdiction over such claims.").

Abreu similarly asks the Court to order his immediate release. (Doc. 2.) He claims that Respondents violated his due process rights by holding him without a bond hearing. (Doc. 1 at 7.) But in the context of a temporary restraining order—where the Court has heard only one side of the story—we must be cautious. The government has not yet had a chance to respond. It may be that a bond hearing is not required at all in this circumstance. And even if these violations occurred, the typical remedy for a procedural defect is to order the agency to provide the process that was due, not necessarily to order immediate release. *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009).

"The purpose of a temporary restraining order . . . is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). Abreu does not seek to maintain the status quo but rather to obtain (immediately) the ultimate relief sought in the habeas petition. "[R]elief altering the status quo rather than maintaining it is routinely denied by courts." *Goldstein v. Nat'l Collegiate Athletic Ass'n*, No. 3:25-CV-00027-TES, 2025 WL 581333, at *2 (M.D. Ga. Feb. 20, 2025); *Ludy v. Dozier*, No. 1:18-CV-165 (WLS), 2019 WL 13434824, at *1 (M.D. Ga. Oct. 25, 2019) (denying injunction where it "would alter the status quo and provide [the movant] the relief he seeks before the Court is able to adjudicate this case on the merits").

While the Court takes Abreu's underlying liberty claims seriously, the specific stopgap measures he requests are either beyond our reach or not appropriate. Accordingly, his emergency motions (Docs. 2, 3, 4, 5) are **DENIED**, and the case will proceed to a review of the merits of the habeas petition.

**ORDERED** in Fort Myers, Florida on April 15, 2026.

Kyle C. Dudek
United States District Judge

5